<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| FRANK MAZZOLA,<br><br>Plaintiff,<br><br>v.<br><br>PRIME EFS, LLC, *et al.*,<br><br>Defendants. | Case No. 2:20-cv-13387 (BRM) (ESK)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are the following two motions: (1) Transportation and Logistics Systems, Inc. ("TLS") (f/k/a PetroTerra Corp. ("PetroTerra")), John Mercadante ("Mercadante"), and Douglas Cerny's ("Cerny") (collectively, "Moving Defendants")[1] Motion to Dismiss Plaintiff Frank Mazzola's ("Plaintiff") Amended Complaint for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (ECF No. 27); and (2) Moving Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 30). Plaintiff opposed both Motions. (ECF No. 42.) Moving Defendants filed Replies. (ECF Nos. 43–44.)[2] Pursuant to Federal Rule of Civil Procedure 78(a), this Court heard oral argument on September 9, 2021. (ECF No. 64.)[3] For the reasons set forth

---

[1] Defendant Prime EFS, LLC ("Prime") did not join the Motions.

[2] ECF Nos. 43 and 44 are virtually identical.

[3] At the oral argument, the Court ordered supplemental briefing on the question of whether the action should be transferred to New York given the mandatory Forum Selection Clauses which designate New York as the only possible forum. (*See* ECF No. 64.) *See also* ECF No. 26 ¶ 23, which provides that:

herein and for good cause shown, Moving Defendants' Motions are **DENIED as MOOT**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of the Motions to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). However, on a motion to dismiss pursuant to Rule 12(b)(2), "plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Therefore, the Court is not bound by the pleadings to determine jurisdiction, *see id.*, and, to the extent they are material or applicable, will include relevant allegations pertaining to jurisdiction in its summary of the facts, while construing all disputed facts in favor of Plaintiff. *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

The Court assumes the parties' familiarity with the factual and procedural history of this matter and therefore, only includes the facts and procedural history necessary to decide the instant

---

the Company and Executive hereby irrevocably and unconditionally agree that all claims in respect of any such action or proceeding may be heard and determined in any such New York State court or, to the extent permitted by law, in such federal court. The Company and Executive irrevocably waive, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

The Court has reviewed the parties' papers (*see* ECF Nos. 66 and 67) and despite the Court's invitation to advance any meaningful argument as to why the Forum Selection Clauses should not govern, the Court remains unmoved by the parties' submissions and will therefore enforce the Forum Selection Clauses. Finally, while the Court notes ECF No. 67 was filed past the 12:00 p.m. filing deadline, the Court still reviewed the submission.

Motions. Mazzola, a resident of New Jersey, was the Former Chief Operating Officer and later Vice President of Sales at Prime. (First Am. Compl. (ECF No. 26) ¶ 5.) Prime, a trucking and transportation business, is a New Jersey limited liability company, headquartered in New Jersey, and a wholly-owned operating subsidiary of TLS. (*Id.* ¶¶ 6, 8.) TLS, a logistics and transportation company specializing in eCommerce fulfillment, is a Nevada corporation with its principal place of business in Florida. (*Id.* ¶¶ 9–10.) TLS and Prime operate in New York, New Jersey, Pennsylvania, Ohio, Tennessee, Georgia, and Florida. (*Id.* ¶ 10.) Since on or about April 16, 2019, Mercadante has been Chairman of the Board of Directors, Chief Executive Officer, President and Principal Financial Officer of TLS as well as the Chief Executive Officer, President and Manager of Prime. (*Id.* ¶ 13.) Since around April 16, 2019, Cerny has been the Chief Development Officer and Director of TLS, as well as the Vice President, Secretary of Prime and Manager of Prime. (*Id.* ¶ 14.) Both Mercadante and Cerny are believed to be residents of Florida. (*Id.* ¶¶ 13–14.) Plaintiff contends:

> Mercadante and Cerny [] intentionally caused TLS to: dominate and control every aspect of Prime; disregard the corporate formalities between parent and subsidiary; undercapitalize Prime; cause Prime to apply for Paycheck Protection Program loan ("PPP loan") and, upon receipt of such proceeds siphon hundreds of thousands of dollars of Prime operating capital that was already in Prime's accounts out of Prime and into TLS for uses unrelated to Prime; and dishonor Prime's indebtedness and creditors, including Mazzola, at the same time as stripping away all of Prime's revenue and operating capital.

(*Id.* ¶ 16.)

Additionally, "Mercadante and Cerny have intentionally and fraudulently induced Plaintiff to delay and not enforce his contractual rights and remedies under the Employment Agreement against Prime and TLS until TLS had no further use or need" for Prime or Plaintiff. (*Id.* ¶ 18.)

On June 18, 2018, TLS completed the "acquisition of one hundred percent (100%) of the issued and outstanding membership interests of Prime from its members pursuant to the terms and conditions of a Stock Purchase Agreement." (*Id.* ¶ 25.) TLS "also caused Prime, as its wholly-owned subsidiary, to execute a Security Agreement and Guarantee in favor its parent company and sole member, TLS, in order to induce a third-party investor" to provide financing for the acquisition of Prime. (*Id.* ¶ 26.) TLS concurrently caused Prime to enter into an Employment Agreement (the "Employment Agreement") with Mazzola, which was a requirement as "expressly stated in Section 5.2 of the Stock Purchase Agreement." (*Id.* ¶ 28.) The Employment Agreement entered into on or about June 18, 2018, was signed by Mazzola and non-party Steven Yariv, former Chief Executive Officer and Chairman of TLS and Prime. (*Id.* ¶ 11.) Prior to the closing on the acquisition of Prime, on June 13, 2018, the Board of Directors of TLS ratified, authorized, and approved terms of both the acquisition transaction and Employment Agreement. (*Id.* ¶ 28.) As required by Section 6.2.2 of the Stock Purchase Agreement, following the exchange of executed documents, the transaction closed. (*Id.* ¶ 32.) TLS reported the successful closing of the transaction in its Form 10-Q for the quarterly period ended June 30, 2018. (*Id.* ¶ 33.) The Form 10-Q, filed with the Security Exchange Commission, stated both TLS and Prime "are and intend to be collectively responsible for the Employment Agreement," and was signed by Mercadante as Chief Executive Officer, Chief Financial Officer, President and Director of TLS, and by Cerny as Director of TLS. (*Id.* ¶ 36.)

Mazzola contends he performed all of his obligations under the Employment Agreement and provided significant revenue growth to both Prime and TLS. (*Id.* ¶¶ 38–39.) By the end of 2019, under the stewardship of Mazzola, Prime achieved annualized revenue of or in excess of $30 million, which obligated TLS and Prime to increase Mazzola's base salary from $780,000.00

4

to $1,040,000.00, pursuant to Section 3(a) of the Employment Agreement. (*Id.* ¶ 40.) Notwithstanding the revenue growth, Mercadante and Cerny "decided that Mazzola's outstanding success and commensurate compensation," was "too rich" and had "to be cut despite" the fact the Employment Agreement was "approved by Mercadante's predecessor and TLS' Board of Directors." (*Id.* ¶ 52.) Therefore, in "contravention of TLS' prior and repeated acknowledgments in its public filings that TLS and Prime are and intend to be bound by the Employment Agreement, and without the authority and approval of Mazzola, Mercadante and Cerny caused TLS and Prime to dramatically cut Mazzola's compensation starting in May 2019." (*Id.* ¶ 53.) Mazzola did not "approve, waive or ratify" Mercadante or Cerny's "unilateral acts in violation of the Employment Agreement." (*Id.* ¶ 54.) In fact, Mazzola protested and objected to the "patent breach of his compensation terms" and threatened to take action to protect his rights under the Employment Agreement. (*Id.* ¶ 55.) In response, starting in or around March 2019, Mercadante and Cerny initiated or participated in multiple discussions with Mazzola "wherein each materially misrepresented facts and deceived Mazzola as to the nature of his compensation cuts, the amount of the cuts and the duration of the cuts." (*Id.* ¶ 56.)

Thereafter, "Mercadante and Cerny repeatedly advised Mazzola that they would present his new terms of employment and compensation, but their representations as to the existence of such a document were hollow." (*Id.* ¶ 58.) "Aware of the actions taken by TLS and Prime at the behest of Mercadante and Cerny, TLS' accountants advised them (and Mazzola) that, for accounting purposes, if the parties wishe[d] to amend the Employment Agreement and reduce Mazzola's salary compensation," TLS or Prime would be required produce an amended employment agreement. (*Id.* ¶ 59.) Neither TLS, Prime, Mercadante nor Cerny produced an amended employment agreement. (*Id.* ¶ 60.) "With no recourse," Mazzola continued to perform

his obligations under the Employment Agreement and "demand[ed] that Mercadante and Cerny comply with their repeated promises to present the amended employment terms to Mazzola." (*Id.* ¶ 61.)[4]

On June 24, 2020, Plaintiff's employment was terminated. (*Id.* ¶ 70.) At the time of his termination, TLS directed Prime to cut Plaintiff's annualized salary from $1,040,000.00 to $350,000.00. As of his termination date, $759,038.41 of accrued salary was still unpaid and overdue. (*Id.* ¶ 71.) "TLS completely dominated every aspect of the operations and management of its wholly-owned subsidiary, Prime, and used its subsidiary like a personal 'piggy bank' for harvesting revenue." (*Id.* ¶ 76.) Neither TLS nor Prime made any payments or otherwise provided any of the non-cash benefits due to Mazzola under the Employment Agreement. (*Id.* ¶ 77.) Further, "Mercadante and Cerny secretly intended to force TLS and Prime" to "disavow all of the obligations owed" to Plaintiff, to "pacify" Plaintiff with "oral and written misrepresentations that Mercadante and Cerny would restructure Mazzola's employment contract if he would hold-off on enforcing his rights under the Employment Agreement." (*Id.* ¶ 83.) To date, TLS and Prime have not paid Mazzola "his compensation and benefits due under the express terms of the Employment Agreement, including: $1,040,000.00 in annualized salary representing severance under Section 5 of the Employment Agreement; approximately $759,038.41," which represents "accrued but unpaid salary" under Section 3(a) of the Employment Agreement through the date of termination;

---

[4] "Despite Prime reporting gross revenue of $16,970,355.00 in the first six months of 2020," on or about April 27, 2020, TLS filed a Form 8-K with the Security Exchange Commission, which disclosed that, on April 8, 2020, Prime applied for a loan available under the Paycheck Protection Program ("PPP") of the Coronavirus Aid, Relief and Economic Security Act of 2020 (the "CARES Act"). (*Id.* ¶ 62.) Mercadante signed the repayment obligation on the PPP loan as the "Authorized Representative" of Prime. (*Id.* ¶ 64.) On April 22, 2020, Prime received $2,941,212.50 in PPP loan proceeds. (*Id.* ¶ 66.)

and all non-cash benefits and services under Sections 3(b)-(i) of the Employment Agreement. (*Id.* ¶ 84.)

On or about September 1, 2020, Plaintiff commenced suit in the Southern District of New York, captioned *Frank Mazzola v. Prime EFS, LLC, Transportation and Logistics Systems, Inc. f/k/a PetroTerra Corp., John Mercadante and Douglas Cerny*, Case No. 1:20-cv-05788. (*Id.* ¶ 19.) "After an initial meeting and conferring with opposing counsel and based on facts then available to all parties, with the Court's consent," Plaintiff voluntarily discontinued the action without prejudice. (*Id.* ¶ 20.) On or about August 26, 2020, Plaintiff filed a Complaint in the Superior Court of New Jersey, Bergen County, Law Division, captioned *Frank Mazzola v. Prime EFS, LLC, Transportation and Logistics Systems, Inc. f/k/a PetroTerra Corp., John Mercadante and Douglas Cerny*, Docket No. BER-L-004967-20. (*Id.*) On September 28, 2020, Moving Defendants removed the action to the District of New Jersey. (*Id.* ¶ 21.) Plaintiff acknowledges in the Amended Complaint that the Employment Agreement provides the following forum selection, choice of law and waiver provisions ("Forum Selection Clauses") that "govern this dispute":

     (i)    <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with and subject to, the laws of the State of New York applicable to agreements made and to be performed entirely within such state without regard to its conflicts of law rules.

     (j)    <u>Jurisdiction and Venue</u>.

        (i)    The Company and Executive hereby irrevocably and unconditionally submit, for themselves and their property, to the exclusive jurisdiction of any New York State court or federal court of the United States of America sitting in the City of New York and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or for recognition or enforcement of any judgment, and the Company and Executive hereby irrevocably and unconditionally agree that all claims in respect of any such action or proceeding may be heard and

determined in any such New York State court or, to the extent permitted by law, in such federal court. The Company and Executive irrevocably waive, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. The Company and Executive agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Executive agrees not to commence a claim or proceeding hereunder in a court other than a New York State court or federal court located in the City of New York, except if Executive has first brought such claim or proceeding in such New York State court or federal court located in the City of New York, and such court or courts have denied jurisdiction over such claim or proceeding.

(ii)     The Company and Executive irrevocably and unconditionally waive, to the fullest extent they may legally and effectively do so, any objection that they may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any New York State court or federal court of the United States of America sitting in the City of New York and any appellate court from any thereof.

(*Id.* ¶ 23.)

On December 7, 2020, Plaintiff filed an Amended Complaint. (ECF No. 26.) On January 11, 2021, Moving Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 27.) Moving Defendants also concurrently filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 30.) On February 17, 2021, Plaintiff filed an Opposition to both Motions. (ECF No. 42.) On February 22, 2021, Moving Defendants filed Replies. (ECF Nos. 43–44.) On September 9, 2021, the Court held oral argument on the Motions to Dismiss and afforded the parties an opportunity to file supplemental briefing addressing the mandatory Forum Selection Clauses. (*See* ECF Nos. 58 and 64.) On September 20, 2021, the parties filed supplemental briefings. (*See* ECF Nos. 66 and 67.)

## II.   Legal Standards

### A.   Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Although the plaintiff must ultimately prove personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the early stages of litigation. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Instead, the plaintiff must "present[ ] a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Id.* at 1223 (citations omitted). Because a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings," the jurisdictional allegations may be supported with sworn affidavits or other documents. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Once the plaintiff meets his or her burden, the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (citation omitted).

### B.   Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to [the plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

9

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "further factual enhancement[s]" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy*

*Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor are they compelled to accept "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [into one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### C.     Transfer of Venue pursuant to 28 U.S.C. § 1404(a)

The federal venue statute, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The movant bears the burden to establish the need for transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The Third Circuit, however, has recognized that district courts "may transfer a case at the parties' request or sua sponte, it need not investigate on its own all other courts that 'might' or 'could have' heard the case." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) (citing 28 U.S.C. §§ 1404(a), 1406(a)); *Amica Mutual Insurance Co. v. Fogel*, 656 F.3d 167, 180 (3d Cir. 2011) (recognizing sua sponte transfers); *Lafferty v. Gito St. Riel*, 495 F.3d 72 (3d Cir. 2007) (providing that "Section 1404(a) transfers are *discretionary* determinations made for the convenience of the parties") (emphasis added). *See, e.g., Ziemkiewicz v. R+L Carriers, Inc.*, Civ. A. No. 12-1923, 2013 WL 505798, at *1 (D.N.J. Feb. 8, 2013) ("Because this Court has

jurisdiction and venue is proper, this Court has the authority to *sua sponte* transfer this case pursuant to 28 U.S.C. § 1404(a)."); *Meyers v. Heffernan*, Civ. A. No. 10-212, 2012 WL 1133732, at *5 (D. Del. Mar. 29, 2012) ("A Court's authority to transfer cases pursuant to 28 U.S.C. § 1404(a) does not depend upon a motion, stipulation, or consent of parties to the litigation."); *Bent Glass Design v. Scienstry, Inc.*, Civ. A. No. 13-4282, 2014 WL 550548, at *6 (E.D. Pa. Feb. 12, 2014) ("[W]hile venue is initially reliant on a plaintiff's preference as reflected in the pleadings, a district court may upon motion or *sua sponte* dismiss or transfer a civil action to any other district in the interest of justice and/or for the convenience of parties and witnesses."); *Bank Express Int'l v. Kang*, 265 F. Supp. 2d 497, 507 n.12 (E.D. Pa. 2003) ("Although no party has requested it, we may transfer venue under § 1404(a) *sua sponte*."). Based on that authority, and because this Court has jurisdiction and venue is proper, this Court will *sua sponte* transfer this case pursuant to 28 U.S.C. § 1404(a).

## III.   DECISION

Moving Defendants argue the Court lacks personal jurisdiction over TLS, Mercadante, and Cerny. (*See* ECF No. 27-1.) However, Moving Defendants do not rely on the Forum Selection Clauses as the basis for dismissal. In fact, despite the Forum Selection Clauses in the Employment Agreement designating New York as the only possible forum, neither party seeks to enforce the Forum Selection Clauses. Perhaps, in anticipation of the Court's questions about the Forum Selection Clauses, Plaintiff contends, "[o]n information and belief, prior counsel stipulated and agreed that this action should remain venued in the District Court of New Jersey." (ECF No. 26 n.1.) Plaintiff further contends, the Employment Agreement does not "govern the fraudulent inducement claim against Mercadante and Cerny who did not contract directly with Plaintiff." (ECF No. 42 at 12 n.2.)

The Third Circuit's opinion in *In re McGraw-Hill Global Education Holdings LLC*, 909 F. 3d 48, 59 (3d Cir. 2018), provides guidance here. In *McGraw-Hill*, the Third Circuit confirmed the following relevant principles on the enforceability of a forum selection clause to a non-signatory. First, "[u]nder traditional principles of contract law, non-signatories may be bound by a forum selection clause if they are intended third-party beneficiaries of the contract, or if they are closely related parties." *Id*. Second, the Third Circuit emphasized it "will not enforce a forum selection clause against a non-signatory unless such enforcement was foreseeable to the non-signatory." *Id*. Finally, the dispute itself must fall within the scope of the forum selection clause to the trigger the clause. *Id*.; *Mehta v. Angell Energy*, Civ. A. No. 182319, 2019 WL 4750142, at *5 (D.N.J. Sept. 30, 2019).

Given the allegations and arguments before the Court, the Court will consider the three issues the Third Circuit considered in *McGraw-Hill* to determine whether the Forum Selection Clauses in the Employment Agreement apply to the Moving Defendants and whether transfer is appropriate. First, the Court will consider whether the Moving Defendants are bound by the terms of Employment Agreement. *Id*. at 59. Second, the Court will consider whether the enforcement of the Forum Selection Clauses was foreseeable to the Moving Defendants. *Id*. Finally, the Court will determine whether "the dispute itself . . . fall[s] within the scope of the forum selection clause." *Id*.

"Federal law controls the question of whether to enforce a forum selection clause." *Id*. at 58. (citing *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 407 n.11 (3d Cir. 2017)). "The interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017). To determine the scope of a forum selection clause the court must interpret the contract, and Third Circuit case law

requires the court to use state law to determine whether the parties and claims are subject to the forum selection clause. *Id.* at 180–81. "State law therefore, typically governs whether . . . the [forum selection] clause applies to a non-signatory as an intended beneficiary or closely related party." *McGraw-Hill*, 909 F.3d at 58.

Here, however, the parties do not meaningfully advance any arguments regarding the Forum Selection Clauses and its interpretation pursuant to New Jersey or New York law. Plaintiff merely contends, in a footnote, that while "the contracts between Plaintiff and Defendants specify New York as the choice of law, [] that provision does not govern tort claims against [TLS], which did not contract directly with Plaintiffs, or the individual Defendants who did not contract with Mazzola." (ECF No. 42 at 32 n.12.) In any case, Plaintiff contends, "the relevant areas of New York and New Jersey law do not conflict." (*Id.*) In light of the parties' briefing, the Court will base its decision on general contract law principles instead. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (basing the decision on general contract law principles where parties made "little reference to English contract law"); *Mehta*, 2019 WL 4750142, at *6 ("bas[ing] its decision on general contract law principles" where parties failed to "advance any arguments regarding the forum selection clause and its interpretation pursuant to New Jersey or Minnesota law"); *O'Shaughnessy v. Palazzo*, 496 F. Supp. 3d 872, 878 (E.D. Pa. 2020) ("Neither party has argued that the forum selection clause should be interpreted by Pennsylvania, California, or any other state law. As such, I will 'therefore base [my] decision on general contract law principles.'") (citing *John Wyeth*, 119 F.3d at 1074).

## A.    Applicability of Forum Selection Clauses to Non-Signatories

"Under traditional principles of contract law, non-signatories may be bound by a forum selection clause if . . . *they are closely related parties*." *McGraw-Hill*, 909 F.3d at 59 (emphasis

14

added). "In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *See Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015) (permitting non-signatory to enforce forum selection clause against signatory under the closely related parties' doctrine); *see also McGraw-Hill*, 909 F.3d at 63.

The Court finds Moving Defendants are closely related to the Employment Agreement. Plaintiff alleges TLS "caused Prime to enter into the Employment Agreement with Mazzola" (ECF No. 26 ¶ 28), "disregarded the corporate form of Prime[,] and used it to perpetrate an unlawful act in which millions of dollars of operating capital . . . were unlawfully wrenched out of Prime leaving it undercapitalized and unable to pay Plaintiff." (*Id.* ¶ 73.) Plaintiff also alleges:

> Mercadante and Cerny have intentionally caused TLS to: dominate and control every aspect of Prime; disregard the corporate formalities between parent and subsidiary; undercapitalize Prime; cause Prime to apply for Paycheck Protection Program loan ("PPP loan,") and, upon receipt of such proceeds siphon hundreds of thousands of dollars of Prime operating capital that was already in Prime's accounts out of Prime and into TLS for uses unrelated to Prime; and dishonor Prime's indebtedness and creditors, including Mazzola, at the same time as stripping away all of Prime's revenue and operating capital.

(*Id.* ¶ 16.) Plaintiff further alleges: "As the highest officers and directors of TLS, the highest officers of its wholly-owned subsidiary, Prime, and the Managers of Prime, the conduct of Mercadante and Cerny are closely related to the contractual relationship at issue in this Complaint." (*Id.* ¶ 17.) Because Plaintiff alleges TLS dominated and controlled Prime and Plaintiff's claims against Mercadante and Cerny arise out of the Employment Agreement, the Court finds that the Moving Defendants are closely related parties. *Carlyle Inv. Mgmt.*, 779 F.3d at 219 ("In determining whether a non-signatory is closely related to a contract, courts consider

15

the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement."); *Mehta*, 2019 WL 4750142, at *6.

### B.    Enforcement was Foreseeable

"Foreseeability is a prerequisite to applying the closely related parties doctrine[,]" and "before binding a non-signatory as a closely related party, [Third Circuit precedent] require[s] a finding that enforcement of the clause by or against the non-signatory would be foreseeable." *McGraw-Hill*, 909 F.3d at 64; *see also Lefkowitz v. McGraw–Hill Cos.*, Civ. A. No. 13–1661, 2013 WL 3061549, at *3 (E.D. Pa. June 9, 2013); *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (recognizing that using "[a] literal approach to interpreting forum selection clauses" could undermine their purpose); *Adams v. Raintree Vacation Exch.*, 702 F.3d 436, 441 (7th Cir. 2012) (reasoning that "[w]ere it not for judicial willingness in appropriate circumstances to enforce forum selection clauses against [nonparties], such clauses often could easily be evaded").

"A foreseeability finding in the context of forum selection clauses must have some evidentiary basis, other than pure speculation, that the party sought to be bound had an awareness of the clause, its contents, and that it might be defensively invoked." *McGraw-Hill*, 909 F.3d at 65. The foreseeability standard requires "the *actual forum* be foreseeable, and that there be some evidentiary basis for such a finding.'" *Id.* (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir. 1983)).

The Court finds the enforcement of the Forum Selection Clauses foreseeable to the Moving Defendants. Indeed, according to Plaintiff, "TLS is the only member of Prime, is financially dependent on Prime and is the intended third-party beneficiary of the underlying contracts

[including the Employment Agreement] at issue in this Complaint." (ECF No. 26 ¶ 9.) Plaintiff alleges TLS "ratified, authorized and approved terms of both the acquisition transaction and Employment Agreement." (*Id.* ¶ 29.) Further, Plaintiff also alleges:

> On or about August 19, 2019, TLS filed with the Commission a Form 10-Q for the quarterly period ended June 30, 2019, which confirmed that the parent company – TLS – had intended to be bound and was bound to the Employment Agreement between its wholly-owned operating subsidiary, Prime, and Mr. Mazzola . . . .

(*Id.* ¶ 35.) With respect to Mercadante and Cerny, Plaintiff alleges the "Form 10 Q sets forth that TLS and Prime are and intend to be collectively responsible for the Employment Agreement," and the filing was signed by Mercadante, as Chief Executive Officer, Chief Financial Officer, President and Director of TLS, and by Cerny, as Director of TLS. (*Id.* ¶ 36.) Plaintiff also alleges:

> Mercadante and Cerny secretly intended to force TLS and Prime (and the employees of Prime) to disavow all of the obligations owed to Mazzola, to pacify Mazzola with oral and written misrepresentations that Mercadante and Cerny would restructure Mazzola's employment contract if he would hold-off on enforcing his rights under the Employment Agreement.

(*Id.* ¶ 83.)

Based on these allegations, the Court concludes the enforcement of the Employment Agreement, including the Forum Selection Clauses, was foreseeable by the Moving Defendants and Plaintiff.

### C.    Scope of the Forum Selection Clauses

"Whether or not a forum selection clause applies depends on what the specific clause at issue says." *John Wyeth*, 119 F.3d at 1075. Therefore, courts must look to the language of the forum selection clause to determine its scope. *Schering Corp. v. First Databank, Inc.*, 479 F. Supp. 2d 468. 470 (D.N.J. 2007). Many courts have found that clauses using the phrase "relating to" indicate that the scope of the clause is subject to a broader interpretation than those using the phrase

"arising under." *Lasoff v. Amazon.com, Inc.*, Civ. A. No. 15-2886, 2016 WL 355076, at *3 (D.N.J. Jan. 28, 2016); *see Schering Corp.*, 479 F. Supp. 2d at 470; *Parts Geek, LLC v. U.S. Auto Parts Network, Inc.*, Civ. A. No. 09-5578. 2010 WL 1381005, at *6 (D.N.J. Apr. 1, 2010). In *Lasoff*, the court was faced with a forum selection clause that provided: "[a]ny dispute with [the defendant] or its affiliates *relating in any way* to this Agreement or your use of the Services [] shall be adjudicated in any state or federal court in King County, Washington, and you consent to exclusive jurisdiction and venue in such courts." *Lasoff*, 2016 WL 355076, at *3. The *Lasoff* plaintiff argued his claims did not arise out of the agreement between the parties, instead arguing he brought suit against the "[d]efendant for violations of state and federal law under rights that exist independent of any agreement." *Id.* The court rejected this argument finding all of the plaintiff's claims related to the agreement even if they were based on federal and state law. *Id.*

As in *Lasoff*, Plaintiff's claims relate directly to the Employment Agreement. The Forum Selection Clauses at issue state: "any action or proceeding arising out of or relating to this Agreement . . . ." (ECF No. 26-2 at 15.) Here, Plaintiff brings claims for "accrued but unpaid" salary Plaintiff contends he was entitled to pursuant to the Employment Agreement. The Court, accordingly, finds this dispute is within the scope of the Forum Selection Clauses.[5]

Plaintiff insists the "operative documents specify New York as the choice of law and forum, but that provision does not govern the fraudulent inducement claim against Mercadante and Cerny who did not contract directly with Plaintiff." (ECF No. 42 at 12 n.2.) A forum selection

---

[5] *Sahara Sam's Oasis, LLC v. Adams Cos., Inc.*, Civ. A. No. 10-0881, 2010 WL 3199886, at *6 (D.N.J. Aug. 12, 2010) ("Because all of the claims—including those sounding in tort— arise from the contractual relationship, the forum selection clause must apply to each of the claims."); *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (D.N.J. 1983) ("[W]here the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain [in the forum selection clauses].")

clause is "'prima facie valid' and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3d Cir. 1986) (quoting *M/S Bremen v. Zapatha Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Indeed, the Third Circuit has held that a forum selection clause should be enforced unless it is "the result of fraud or overreaching, enforcement would violate a strong public policy of the forum, or that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556. 563 (D.N.J. 2000) (citing *Reynolds Pub., Inc. v. Graphics Fin. Grp., Ltd.*, 938 F. Supp. 256, 263 (D.N.J. 1996)). A forum selection clause, however, may be set aside "only where 'the inclusion of that clause in the contract was the product of fraud or coercion.'" *Danka Funding. L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 470 (D.N.J. 1998) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)); *see also Hoffer*, 102 F. Supp. 2d at 563. "It is insufficient, therefore, 'to allege that one was induced generally to enter into the contract itself as a result of fraud.'" *Hoffer*, 102 F. Supp. 2d at 563–64 (quoting *Nat'l Micrographics Sys. v. Canon U.S.A.*, 825 F. Supp. 671, 675 (D.N.J. 1993)).

Plaintiff's arguments regarding the scope and validity of the Forum Selection Clauses are unavailing. Plaintiff does not argue or show he was fraudulently induced to agree to the Forum Selection Clauses or was even fraudulently induced to enter the Employment Agreement. Rather, Plaintiff simply argues Moving Defendants engaged in a pattern of misconduct by "intentionally and fraudulently induc[ing] Plaintiff to delay and not enforce his contractual rights and remedies under the Employment Agreement against Prime and TLS until TLS had no further use or need of Prime or Plaintiff." (ECF No. 26 ¶ 18.) The Court finds these arguments are insufficient to

overcome the presumption that the Forum Selection Clauses are *prima facie* valid and should be enforced. *See Danka Funding*, 21 F. Supp. 2d at 470; *Hoffer*, 102 F. Supp. 2d at 563; *Mehta*, 2019 WL 4750142, at *7–8.

For the foregoing reasons, the Court finds the Forum Selection Clauses apply to the Moving Defendants. As a result, the Court further finds the Forum Selection Clauses are applicable and enforceable with respect to the Moving Defendants.

### D.      Public Interest Factors

Ordinarily, in a case not involving a forum selection clause, a court evaluates transfer pursuant to § 1404(a) using such factors as the convenience of the parties and the relevant public interests. *Mathias v. Caterpillar, Inc.*, 203 F. Supp. 3d 570, 574 (E.D. Pa. 2016). However, if a forum selection clause enters the picture, the calculus changes and it should be given controlling weight in all but the most exceptional cases. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Indeed, in *Atlantic Marine*, the Supreme Court clarified that "the presence of a valid forum selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 63. First, the plaintiff's choice of forum "merits no weight" and plaintiff has the "burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, "the court should not consider the parties' private interests aside from those embodied in the forum-selection clause; it may consider only public interests. Because public-interest factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* Third, when a party bound by a forum selection clause "flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* The Supreme

Court explained, with these modifications, district courts should enforce valid forum selection clauses "in all but the most unusual cases." *Id.*

In considering whether such extraordinary circumstances exist, a court may consider "arguments about public interest factors only," including "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in the forum that is at home with the law." *Atl. Marine*, 571 U.S. at 64, 64 n.6 (citations omitted). The public interest factors must "overwhelmingly disfavor a transfer" to overcome the forum selection clause. *Id.* at 67.

The Court does not find any public interest factors sufficient to defeat the "controlling weight" of the Forum Selection Clauses. *See Reading Rock Ne., LLC. v. Russel*, Civ. A. No. 20-5728, 2021 WL 870642, at *8–9 (D.N.J. Mar. 8, 2021); *Sherlock v. Lifestyle Hearing Corp. (USA), Inc.*, Civ. A. No. 19-743, 2019 WL 5102231, at *5 (E.D. Pa. Oct. 10, 2019). This Court concludes that this action is governed by the Forum Selection Clauses. The parties must therefore submit to the jurisdiction of New York pursuant to the Employment Agreement and the case will be transferred to a federal district court in New York.

## IV.   CONCLUSION

For the reasons set forth above, Moving Defendants' Motions are **DENIED as MOOT**. Neither party has directed this Court to a particular district in New York in which the case may be transferred. Under these circumstances, Plaintiff will be afforded an opportunity to indicate whether he wants the Court to transfer the action to an appropriate federal district court in New York.

Dated: September 24, 2021
                                                  */s/ Brian R. Martinotti*
                                                  **BRIAN R. MARTINOTTI**
                                                  **UNITED STATES DISTRICT JUDGE**